*No Oral Argument Scheduled*
No. 12-5331

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA

---

Carolyn Jurewicz; The Hunte Corporation;
Missouri Pet Breeders Association; Sharon Lavy,
*Plaintiffs-Appellants,*

v.

United States Department of Agriculture
*Defendant-Appellee,*

and

The Humane Society of the United States,
*Intervenor-Defendant-Appellee.*

---

*On appeal from the United States District Court*
*for the District of Columbia (Hon. James E. Boasberg)*

---

## BRIEF OF INTERVENOR-DEFENDANT-APPELLEE
## THE HUMANE SOCIETY OF THE UNITED STATES

---

Aaron D. Green
Jonathan R. Lovvorn
The Humane Society of the United States
2100 L Street, NW
Washington, DC  22037
*Counsel for The Humane Society of the*
*United States*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellee HSUS states the following:

**A. Parties and Amici:** All parties, intervenors, and *amici* appearing before the district court and in this Court are listed in Appellants' Opening Brief.

**B. Rulings Under Review:** References to the ruling at issue appear in Appellants' Opening Brief.

**C. Related Cases:** To the best of counsel's knowledge, there are no cases related to this matter.

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Appellee The Humane Society of the United States, a non-profit organization that works to protect all animals, certifies that it does not have a parent company, nor is there any publicly held company that has a 10% or greater ownership interest (such as stock or partnership shares).


　/s/ Aaron D. Green　

Aaron D. Green
The Humane Society of the United States
2100 L Street, NW
Washington, DC  20037
Ph: (202) 676-2334
agreen@humanesociety.org

## <u>TABLE OF CONTENTS</u>

PAGE

TABLE OF AUTHORITIES. .............................................................. iii

GLOSSARY OF ABBREVIATIONS. ................................................ vii

STATEMENT OF ISSUES ................................................................ 1

STATEMENT OF FACTS ................................................................. 1

SUMMARY OF ARGUMENT .......................................................... 13

ARGUMENT ................................................................................... 15

I.     Standard of Review.................................................................. 15

II.    PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN
       TO DEMONSTRATE THAT USDA'S EXEMPTION 6
       DETERMINATION WAS ARBITRARY AND CAPRICIOUS ............. 16

       A.  USDA's "Privacy Interest" Determination was Proper....................... 18

           1.  USDA's "Gross Revenue" Determination was Correct. ............... 19

           2.  USDA's Privacy Determination Concerning the "Animals
               Bought and Sold" Information was Proper.................................... 21

       B.  USDA's Determination that the Public Interest is Served by
           Disclosure because it Sheds Light on USDA's Performance
           of its Statutory Duties was Proper........................................................ 22

           1.  The Information at Issue Enables the Public to Determine
               Whether USDA is Complying with the Congressional
               Mandate to Assess and Collect Reasonable and Equitable
               AWA License Fees ....................................................................... 23

           2.  The Information at Issue Enables the Public to Determine
               Whether USDA is Carrying out its Enforcement Duties
               Under the AWA .............................................................................. 28

           3.  USDA Properly Weighed the Public Interests................................. 30

i

C.  USDA Considered the Relevant Factors and Properly Balanced the
    Competing Interests.................................................................................31

III.  PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN
      TO DEMONSTRATE THAT USDA'S EXEMPTION 4
      DETERMINATION WAS ARBITRARY AND CAPRICIOUS. .............33

      A.  USDA and the District Court Applied the Correct, and Only,
          Exemption 4 Test... .............................................................................34

      B.  Plaintiffs Have Not Met their Burden to Demonstrate
          any Harm Related to the Release of the Information at Issue..............35

IV. CONCLUSION.............................................................................................38

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                         PAGE(S)

*Chrysler Corp. v. Brown,*
    441 U.S. 281 (1979)................................................................. 15

*Kissinger v. Reporters Comm. for Freedom of the Press*,
    445 U.S. 136 (1980)................................................................. 31

*Am. Civil Liberties Union v. U.S. Dep't of Justice,*
    655 F.3d 1 (D.C. Cir. 2011)....................................................... 32

*Blackwell v. F.B.I.,*
    646 F.3d 37 (D.C. Cir. 2011)..................................................... 32

*Carter v. U.S. Dep't of Commerce,*
    830 F.2d 388 (D.C. Cir. 1987)................................................... 31

*\*CNA Fin. Corp. v. Donovan,*
    830 F.2d 1132 (D.C. Cir. 1987).......................................... 34, 36

*Consumers' Checkbook Center for the Study of Servs. v.*
*U.S. Dept. of Health and Human Servs.*,
    554 F.3d 1046 (D.C. Cir. 2009)....................... 12, 19, 26, 30, 31

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n,*
    975 F.2d 871 (D.C. Cir. 1992)................................................... 34

*Dickson v. Sec'y of Def.,*
    68 F.3d 1396 (D.C.Cir.1995)..................................................... 24

*Elliott v. U.S. Dep't. of Agric.,*
    596 F.3d 842 (D.C. Dir. 2010).................................................. 16

*Authorities upon which we chiefly rely are marked with asterisks.

iii

# TABLE OF AUTHORITIES
### (continued)

CASES                                                                           PAGE(S)

*Jicarilla Apache Nation v. U.S. Dept. of Interior*,
   613 F.3d 1112 (D.C. Cir. 2010) ............................................................... 16, 36

*Judicial Watch, Inc. v. U.S. Dep't of Def.*,
   715 F.3d 937 (D.C. Cir. 2013) ................................................................. 15, 52

*McDonnell Douglas Corp. v. U.S. Dept. of the Air Force*,
   375 F.3d 1182 (D.C. Cir. 2004) ............................................................... 15, 16

*Motor Vehicle Mfrs. Assoc. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................... 15, 19, 24, 30

\* *Multi Ag Media LLC v. Dep't of Agric.*,
   515 F.3d 1224 (D.C. Cir. 2008) ................................. 15, 17-19, 21, 22, 28, 33

*Nat'l Ass'n of Home Builders v. Norton*,
   309 F.3d 26 (D.C. Cir. 2002) ......................................................................... 20

*Nat'l Parks & Conservation Ass'n v. Kleppe*,
   547 F.2d 673 (D.C. Cir. 1976) ................................................................. 15, 32

*Nat'l Parks & Conservation Ass'n v. Morton*,
   498 F.2d 765 (D.C. Cir. 1974) ........................................................................ 10

*Nat'l Wildlife Fed'n v. Burford*,
   871 F.2d 849 (9th Cir. 1989) ......................................................................... 16

*Occidental Petroleum Corp. v. Secs. Exch. Comm'n.*,
   873 F.2d 325 (D.C. Cir. 1989) ................................................................. 15, 31

*Pub. Citizen Health Research Group v. F.D.A.*,
   704 F.2d 1280 (D.C. Cir. 1983) ............................................................... 34, 35

iv

# TABLE OF AUTHORITIES
(continued)

**CASES**                                                                    **PAGE(S)**

*Ripskis v. Dep't of Hous. & Urban Dev.*,
    746 F.2d 1 (D.C. Cir. 1984)................................................................ 17

*Sw. Airlines Co. v. Transp. Sec. Admin.*,
    650 F.3d 752 (D.C. Cir. 2011)........................................................ 23

*United Techs Corp. v. U.S. Dep't of Def.*,
    601 F.3d 557 (D.C. Cir. 2010)........................................ 16, 33, 38

*Wash. Post Co. v. United States Dep't of Health & Human Servs.*,
    690 F.2d 252 (D.C. Cir. 1982)........................................................ 17

*Nadler v. F.D.I.C.*,
    899 F.Supp. 158 (S.D.N.Y. 1995) .............................................. 35


**STATUTES**

5 U.S.C. § 552(b)(4)............................................................................33

5 U.S.C. § 552(b)(6)............................................................................16

5 U.S.C. § 706(2)(A)..................................................................... 12, 19

7 U.S.C. § 2132 ....................................................................................2

7 U.S.C. § 2133 ....................................................................................2

7 U.S.C. § 2134 ....................................................................................2

7 U.S.C. § 2153 ....................................................................................2

# TABLE OF AUTHORITIES
### (continued)

**REGULATIONS**                                                                      **PAGE(S)**

9 C.F.R. § 1.1 ................................................................................... 2, 3

9 C.F.R. § 2.1 ................................................................................... 3, 26

9 C.F.R. § 2.2 ....................................................................................... 3

9 C.F.R. § 2.6 ............................................................................. 3, 26, 27

9 C.F.R. § 2.7 ............................................................................. 2, 3, 27

9 C.F.R. § 2.127 ................................................................................... 3

**OTHER AUTHORITIES**

Fed. R. App. Proc. 30(c)(2)(a) ............................................................. 4

# GLOSSARY OF ABBREVIATIONS

AR – Administrative Record

AWA – Animal Welfare Act

FOIA – Freedom of Information Act

HSUS – The Humane Society of the United States

USDA – United States Department of Agriculture

MPBA – Missouri Pet Breeders Association

## STATEMENT OF ISSUES

1) Whether Plaintiffs have met their burden to demonstrate that USDA's determination that the information at issue is not covered by Exemption 6 was arbitrary and capricious?

2) Whether Plaintiffs have met their burden to demonstrate that USDA's determination that the information at issue is not covered by Exemption 4 was arbitrary and capricious?

3) Whether this Court should grant Plaintiffs' request to cast aside the three-decades-old Exemption 4 standard applied by USDA and the District Court?

## STATEMENT OF FACTS

In this "Reverse-FOIA" matter, several businesses licensed by the United States Department of Agriculture ("USDA") to breed and/or wholesale pet animals and a trade association (Missouri Pet Breeders Association, "MPBA"),[1] are seeking to prevent the agency from releasing basic federal licensing information requested by The Humane Society of the United States ("HSUS") in three separate requests made pursuant to the Freedom Information Act ("FOIA"). HSUS has been awaiting the release of this routine licensing information for nearly four years.

---

[1] MPBA does not possess a license.

1

## The Animal Welfare Act

Under the AWA, animal "dealers"[2] must have a valid license.  7 U.S.C. § 2134.  The AWA commands USDA to "charge, assess, and cause to be collected reasonable fees for licenses issued" which are to be "adjusted on an equitable basis taking into consideration the type and nature of the operations to be licensed."  7 U.S.C. § 2153.   USDA "shall issue licenses…upon payment of such fee established pursuant to 2153 of [the AWA]: Provided, That no such license shall be issued until the dealer or exhibitor shall have demonstrated that his facilities comply with the standards promulgated by" the agency.  7 U.S.C. § 2133.

USDA has promulgated regulations to implement the AWA, 9 C.F.R. § 1.1, *et seq*.  In addition to standards of care for the animals they buy, sell, transport and house, dealers regulated by the AWA must comply with the licensure requirements found in 9 C.F.R. §§ 2.1-2.12.  In order to remain licensed, within 30 days prior to the expiration of their current license, dealers must submit "an application for license renewal and annual report." 9 C.F.R. § 2.7(a).  The licensee must "certif[y] by signing the application form that, to the best of the applicant's knowledge and belief, he or she is in compliance with the regulations and standards and agrees to

---

[2]  Dealer is defined, in relevant part, as "any person who, in commerce…transports…, buys, or sells, or negotiates the purchase or sale of, (1) any dog or other animal whether alive or dead for research, teaching, exhibition, or use as a pet."  7 U.S.C. § 2132.  Plaintiffs except for MPBA are dealers.

2

continue to comply with the regulations and standards." 9 C.F.R. § 2.2. The licensee must submit "the annual license fee indicated in § 2.6 by certified check, cashier's check, personal check, money order, or credit card" and it must be received by USDA "on or before the expiration date of the license." 9 C.F.R. § 2.1. The licensee must indicate on the application, "the dollar amount of business, from the sale of animals,[3] upon which the license fee is based, directly or through an auction sale, to research facilities, dealers, exhibitors, retail pet stores, and persons for use as pets, by the licensee during the preceding business year (calendar or fiscal), and any other information as may be required." 9 C.F.R. § 2.7(b).

9 C.F.R. § 2.6 "indicates the method used to calculate the license fee" that the dealers must remit to USDA in order to remain licensed. After calculating the figure that their respective licenses are based upon, the dealer compares the figure to the chart set out in 9 C.F.R. § 2.6 to determine what they owe to USDA and must therefore pay to the agency before being relicensed. Pursuant to 9 C.F.R. § 2.127, USDA "publish[es] lists of persons licensed or registered in accordance

---

[3] The AWA regulations define "animal" as "any live or dead dog, cat, nonhuman primate, guinea pig, hamster, rabbit, or any other warmblooded [sic] animal, which is being used, or is intended for use…as a pet." 9 C.F.R. § 1.1.

3

with the provisions" of the AWA and [t]he lists may be obtained upon request from the AC Regional Director."

## The FOIA Requests and Responses

In 2009, HSUS submitted three FOIA requests to USDA[4] seeking information that included the AWA license renewal applications, also known as Form 7003, for various dog breeders and dealers located in Ohio, Iowa, Missouri, Kansas and Nebraska.  AR[5] 1-4; 24-27; 164-66.  USDA eventually responded to the requests and released the requested Forms, but with significant redactions.  AR 5-23 (records for August 2009 request); AR 96-163 (records for October 2009 request); AR 167-701 (records[6] for December 2009 request).  Citing both Exemption 6 (personal privacy) and Exemption 4 (confidential business information) of FOIA, USDA withheld from all of the forms the information at issue in this case.  Specifically, USDA withheld the information contained in "Block 8" (or sometimes Block 10) of the form, which includes: (i) the numbers of

---

[4] The FOIA requests were submitted to the Animal and Plant Health Inspection Service ("APHIS"), an agency within USDA that is in charge of overseeing USDA's implementation of the AWA.  For continuity, all references to APHIS will instead use the term USDA as the Parties have done since this litigation was commenced.

[5] Pursuant to Fed. R. App. Proc. 30(c)(2)(a), citations in this brief to the Administrative Record ("Record") filed with the District Court are indicated as "AR."

[6] USDA claimed to have provided a "second partial response" to the December request however HSUS maintains that it never received any such response.

4

animals bought and sold, (ii) gross dollar amounts derived from regulated activities, and (iii) the dollar amount upon which license fees are based (collectively, the "Block 8 information").  On May 4, 2010, HSUS administratively appealed USDA's withholding of the Block 8 information for all three FOIA requests.  AR 975-990.[7]  Six months later, on October 4, 2010, having received no response to its administrative appeal, HSUS filed suit against the agency under FOIA to compel production.  AR 991-1005; Complaint for Declaratory and Injunctive Relief, Case No. 1:10-CV-1683 ("HSUS Complaint").

### First Round of Comments from Licensees

Pursuant to USDA's FOIA regulations, on November 22, 2010 USDA informed the licensees whose Forms were covered by the FOIA requests that those requests had been made.  AR 1006-09.   USDA asked all of the licensees for their view as to whether the information is protected from disclosure and directed the licensees to "explain item-by-item why disclosure would cause [them] harm with as much specificity as possible." *Id.*  USDA collected and considered over 700 comments.  AR 5526.  An attorney who would later appear as "of counsel" for Plaintiff MPBA in this matter below assisted many of the licensees in their responses to USDA, including providing them with a form response.  *E.g.*, AR

---

[7] For all the Forms involved in this matter, USDA redacted signatures and social security numbers – The HSUS has not and is not challenging those redactions.

5

4238 (Plaintiff Jurewicz, "I have also asked Mr. Franklin W. Losey to assist me in the preparation of my response to your Office."); AR 4408 (Plaintiff Lavy, *id.*).  As such, a significant portion of the comments were nearly identical.  *See* AR 4239 (Plaintiff Jurewicz's comments); AR 4407 (Plaintiff Lavy's comments); *see also*, *e.g.*, AR 3265-82.

Many of the comments spent an inordinate amount of time attacking the HSUS and making completely unsubstantiated and irrelevant claims as to HSUS's purported "malintent" rather than addressing issues actually pertinent to the FOIA exemptions.  *See* AR 4241a-d.  USDA created a chart summarizing the substance of the comments it received and whether the comments addressed issues of "CBI [confidential business information]," "privacy," or "[Exemption]b3."  AR 4516-49.  Notably, some dealers stated that they did not object to release of the withheld information.  *E.g.*, AR 3862; AR 4007.

On March 17, 2011, USDA sent a "letter of intent" to the licensees from whom it solicited comments and informed them that the agency made a determination "to release the information at issue in full."  AR 4550-56.  Plaintiffs brought a "Reverse-FOIA" suit on April 11, 2011 seeking to "[s]et aside USDA's decision to release the records" and asking for a remand to USDA "for adequate and proper notice, comment and decision by USDA."  Case No. 1:11-cv-707-JEB,

6

Dkt. 1.[8]  The HSUS moved to intervene in the matter, Dkt. 11, which was granted, and the case was consolidated with HSUS's FOIA suit.  USDA later moved for a voluntary remand to address an error alleged by the Plaintiffs that related to the agency's use in its March 17 letter of information obtained from non-party/non-licensee the American Kennel Club.  Case No. 1:11-cv-707-JEB, Dkt. 34.  On December 9, 2011, the District Court remanded the matter to USDA so that USDA could obtain a new statement from the Kennel Club and solicit additional comments on that new statement from "Plaintiff licensees," who were to be reached through Plaintiffs' counsel.  Minute Order, Case No. 1:10-cv-1683-JEB, Dec. 9, 2011.

## **Second Round of Comments from Licensees and USDA's Final Determination**

During round two of this process, USDA collected and considered additional comments.  AR 5526.  Again, many of the comments were based on a form response and were mostly identical in all material respects, and again many of them devoted much of their focus to maligning HSUS.  *E.g*., AR 5084; 5087; 5095. USDA created another chart summarizing the substance of the new comments and whether they addressed matters related to the FOIA exemptions at issue.  AR 5467-512.  On February 17, 2012, USDA issued a letter to the licensees stating that

---

[8] Sharon Lavy was not a named party to the lawsuit at that time.

it "determined that [the withheld] information must be released under the FOIA." AR 5525-37 ("Determination Letter").

In the Determination Letter, USDA recounted the substance of comments it received from both Plaintiffs and non-plaintiff licensees.  *Id.*  USDA first addressed privacy concerns under Exemption 6, which authorizes the withholding of information only if it "would constitute a clearly unwarranted invasion of personal privacy."  AR 5527-31.  Taking into account comments about "the licensees' association with the [commercial dog breeding] industry and criticism that HSUS and others have made concerning the industry," AR 5528, USDA noted in the Determination Letter that it already "publishes routine inspection reports, which include licensee names and addresses on its website" and concluded that it "is not clear from [the licensees'] comments how the specific information at issue here would contribute to these specific privacy concerns."  AR 5528-29.

USDA also concluded, however, that "individual licensees do have a limited, cognizable privacy interest in their personal financial information (gross dollars earned through regulated activities)" but that it is "lessened because the information at issue only shows the gross income and not net profit after operating expenses and other costs are considered; therefore it does not provide a complete picture of the individual's finances."  AR 5529.  USDA went on to find that there is "a much weaker privacy interest in the number of animals bought and sold in a

8

given year" in part because the agency already publishes the "number of the adult and puppy dogs" present at a licensee's facility during inspections.  *Id.*

The agency then identified the test it would apply to determine if the Block 8 information falls within Exemption 6, *i.e.*, "whether the public interest outweighs the privacy interest."  *Id.*  USDA "determined that there is a significant public interest in release of the information at issue," with the "pertinent public interest [being] whether release of the information would shed light on an agency's performance of its statutory duties," and it explained how it reached this determination  AR 5529-31.  USDA found disclosure would enable the public to determine "whether the agency is fulfilling its statutory duties and the mandate of Congress" as set out in the AWA: "whether the agency is properly assessing fees in accordance with its regulations," "whether the agency…cause[d] to be collected reasonable fees [which] shall be adjusted on an equitable basis taking into consideration the type and nature of the operations to be licensed" and whether the agency is fulfilling "its enforcement duties under the Animal Welfare Act."  *Id.*

USDA also addressed Exemption 4 in the Determination Letter.  AR 5532-36.  USDA first determined that the withheld information is "commercial or financial" in nature and then proceeded to consider whether release of the information would be "likely…to cause substantial harm to the competitive position of the person from whom the information was obtained" and therefore be

9

covered by Exemption 4. AR 5532 (quoting *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). The agency ultimately determined that the withheld information is too "limited" and therefore "insufficient" to create the risk that someone could calculate the price-per-dog a dealer or breeder received. AR 5533.

On February 24, 2012, Plaintiff Jurewicz, Plaintiff Hunte Corp., Plaintiff MPBA, and new Plaintiff Sharon Lavy filed their Second Amended Complaint. Dkt. 42. The parties then submitted cross-motions for summary judgment.

The District Court granted the HSUS and USDA motions. Order, case No. 1:10-cv-1683-JEB, Dkt. 61 and Memorandum Opinion, Dkt. 62 ("Mem. Op.", "the Opinion"). In its Opinion, the District Court first addressed Exemption 4. The court held that Exemption 4 "applies here if Plaintiffs' competitors would be likely to use the Block 8 information to cause Plaintiffs harm." Mem. Op. 9. It then considered Plaintiffs' two arguments as to why USDA's Exemption 4 determination was improper. First, as to Plaintiffs' argument that the determination was not supported by the Record because there was allegedly no evidence that the fees licensees pay are routinely released to FOIA requesters, the District Court held that "the facts…are directly to the contrary" since the Forms themselves demonstrate that the fees are released. Mem. Op. 10. The court then addressed Plaintiffs' argument that USDA erred in allegedly failing to consider

10

various comments about HSUS's purported purpose for making the FOIA requests. The District Court held that, since these comments do not address harm done by Plaintiffs' competitor, "they have nothing to do with substantial competitive harm." *Id.* Therefore, the District Court held that USDA's Exemption 4 determination was not arbitrary and capricious. Mem. Op. 11.

As to Exemption 6, the District Court first noted that USDA determined that release of the Block 8 information triggers a cognizable privacy interest. *Id.* at 14. The court then addressed Plaintiffs' arguments that disclosure of the information would not serve the public interests that USDA identified. *Id.* at 14-15. First, the District Court rejected Plaintiffs' contention that USDA was prohibited from identifying the public interests and that instead it was HSUS's obligation to do so. The Court noted that the one case Plaintiffs relied on to the contrary was a FOIA case where the agency itself was opposing disclosure, not a Reverse-FOIA case like this one. *Id.* at 15-16.

The court then addressed each of Plaintiffs' arguments as to why the public interest was not served by release of the Block 8 information, and explained why the agency's determination was reasoned and based upon the record evidence. *Id.* at 17-18. After carefully reviewing the Record and the agency's determination, the court found that the USDA's assessment of the public interests was entirely reasonable. The court further found that whether HSUS sought the Block 8

11

information "for its own, personal use," as Plaintiffs contended, was not pertinent to the public interest analysis, because the "Supreme Court…has directly and definitively deemed such intentions irrelevant." Mem. Op. 19.

Finally, the District Court addressed Plaintiffs' arguments that USDA erred in the final balancing of the private and public interests. *Id.* at 21-23. The court first noted that relevant question before it was "not how this Court would weigh the interests [but rather] whether the USDA's balancing was arbitrary, capricious, or an abuse of discretion." *Id.* at 22 (citing 5 U.S.C. § 706(2)(A)). The court then rejected Plaintiffs' contention that this Court's opinion in *Consumers' Checkbook* demanded a different privacy interest determination since, in both that case and this matter, the privacy interest found was "substantial" and *Consumers'* did not involve a public interest against which to balance so "the case provides little guidance on how to weigh the private interest in such revenue information, let alone guidance on whether the USDA's weighing here was arbitrary and capricious." Mem. Op. 22 (citing *Consumers' Checkbook Center for the Study of Servs. v. U.S. Dept. of Health & Human Servs.*, 554 F.3d 1046 (D.C. Cir. 2009)). In the end, the District Court held that "Section 706 sets a tough standard – a standard Plaintiffs have not come close to meeting" and granted summary judgment in favor of HSUS and USDA.

## SUMMARY OF ARGUMENT

Plaintiffs voluntarily engage in the highly regulated commercial pet trade industry and, as such, are legally required to provide USDA with routine licensure information.  For nearly four years, they have fought USDA's determination to release basic license renewal information under FOIA, however FOIA mandates disclosure of public records unless they are covered by one of several narrow exemptions.  USDA carefully determined, after reviewing voluminous comments from licensees and applying its expertise in the field, that no such exemptions applied here.  Plaintiffs make no headway in explaining why the agency's determination was unreasonable or impermissible; instead, they argue about what the agency might have done differently.  However this Court's role is only to decide if USDA's determination was arbitrary and capricious, not to substitute its judgment for that of the agency.

As to Exemption 6, USDA's determination is supported by the Record and relevant case law.  USDA applied the correct standard.  It considered comments from Plaintiffs and non-plaintiff licensees and properly determined that there is a more than *de minimis* privacy interest in the "gross revenue" and a weaker, though still more than *de minimis* privacy interest in the number of animals bought and sold.  The agency also correctly found a public interest in the release of the information at issue as it would enable the public to determine if USDA is

complying with its statutory mandate to assess and collect reasonable and equitable license fees and carry out proper enforcement of the AWA.  USDA's conclusion that the public interests outweigh the privacy interests is reasonable and confirmed by an analogous case from this Court involving similar information in which USDA was ordered to release information about individual farmers.

USDA's Exemption 4 determination was also proper.  This Court unambiguously requires that a showing of "competitive harm" must flow from the affirmative use of requested information <u>by competitors</u>.  Since Plaintiffs did show that the information at issue would be used by competitors, USDA properly found that the release of the information would not result in any competitive harm to Plaintiffs.  Plaintiffs also do not provide any legitimate support for why this Court should ignore Exemption 4 precedent.  Even under their novel Exemption 4 standard, Plaintiffs are unable to show that any injury would flow from the release of the information at issue as the only remotely relevant statements in the Record on this point are impermissible generalizations and unsubstantiated claims which cannot be considered in assessing possible injury.

This Court should therefore affirm the District Court's Opinion and order the immediate release of these long overdue public records.

14

# ARGUMENT

## I.  Standard of Review

This "Reverse-FOIA" matter is a review of informal agency adjudication, *Chrysler Corp. v. Brown,* 441 U.S. 281, 317–18 (1979), and this Court reviews the district court's grant of summary judgment *de novo.  McDonnell Douglas Corp. v. U.S. Dept. of the Air Force*, 375 F.3d 1182, 1186 (D.C. Cir. 2004).  In its review of the agency decision, this Court's review is limited and it may set aside USDA's Final Determination only if it is arbitrary, capricious or not in accordance with law. *See Motor Vehicle Mfrs. Assoc. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 41 (1983); 5 U.S.C. § 706(2)(A).  Under this standard, a court will uphold an agency's decision even if it is "of less than ideal clarity" if the agency's decision-making process can be reasonably discerned from the Record.  *Id*.  In undertaking its review of the agency's decision, the Court must also be mindful of the clear mandate that FOIA exemptions are to be narrowly construed.  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008).

As the party opposing disclosure, the burden here rests solely on Plaintiffs, s*ee Occidental Petroleum Corp. v. Secs. Exch. Comm'n.*, 873 F.2d 325, 342 (D.C. Cir. 1989), and they must demonstrate that the Block 8 information is exempt from disclosure by producing "specific factual or evidentiary material" to support their position, and that information must be contained within the Record.  *See Nat'l*

*Parks & Conservation Ass'n v. Kleppe,* 547 F.2d 673, 679 (D.C. Cir. 1976). Similarly, this Court takes "due account...of the rule of prejudicial error" and it is Plaintiffs' burden to demonstrate its existence. *Jicarilla Apache Nation v. U.S. Dept. of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010).

This Court does not consider arguments raised for the first time on appeal, s*ee Elliott v. U.S. Dep't. of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010), and it will defer to the agency's "predictive judgments as to 'the repercussions of disclosure.'" *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 563 (D.C. Cir. 2010) (quoting *McDonnell Douglas*, 375 F.3d at 1191 n.4. Lastly, while the reviewing court "consider[s] whether the decision was based on a consideration of the relevant factors," it must not "substitute its judgment for that of the agency." *State Farm,* 463 U.S. at 43; *see also Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989) ("The [agency's] action…need be only a reasonable, not the best or most reasonable, decision.").

## II.    PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN TO DEMONSTRATE THAT USDA'S EXEMPTION 6 DETERMINATION WAS ARBITRARY AND CAPRICIOUS.

Public records may be withheld under Exemption 6 only if their disclosure would be a "clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  To satisfy this standard, disclosure of the information must "compromise a substantial, as opposed to *de minimis*, privacy interest," and the

16

party opposing disclosure must demonstrate the public interest in disclosure does not outweigh the individual privacy concerns. *See Multi Ag*, 515 F.3d at 1229-30. "Because the basic purpose of [FOIA]...focuses on the citizens' right to be informed about what their government is up to, information that sheds light on an agency's performance of its statutory duties is in the public interest." *Id.* at 1231 (internal quotations omitted). Additionally, "[t]he use for which the requestor seeks the information is not relevant for purposes of determining the public interest under FOIA Exemption 6." *Id.* at 1230, n.2. (emphasis added). In light of the explicit use of the phrase "clearly unwarranted" in Exemption 6, "the presumption in favor of disclosure is as strong as can be found anywhere in [FOIA]." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982); *see also Ripskis v. Dep't of Hous. & Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984) ("[T]he 'clearly unwarranted' language of Exemption 6 weights the scales in favor of disclosure").

Plaintiffs failed to demonstrate at the agency level that the Block 8 information falls under Exemption 6, and they are unable to do so here. USDA applied the correct standard in making its Exemption 6 determination. AR 5529. It also considered both the Plaintiffs' comments, AR 5530, as well as comments unattributed by USDA from various licensees. The agency determined that there is more than a *de minimis* privacy interest in the Block 8 information—that is, the

17

privacy interest is "substantial," *Multi Ag*, 515 F.3d at 1229—and also correctly determined that, when included on the Form 7003, the release of the Block 8 information serves the public interest because it "will shed light on the activities of the agency."  AR 5531.  The agency then carefully and properly balanced the public and privacy interests, AR 5529, to reach the correct conclusion that the Block 8 information is not exempt.  AR 5531.

Plaintiffs now challenge USDA's determination and, by extension, the District Court's decision that the agency's determination was appropriate, on two different though related fronts: First, they contend that the agency erred in the identification of the public and private interests; second, they contend that the agency procedurally erred in the manner in which it made its determination.  However, a careful reading of the Record, the Determination Letter and the Opinion demonstrate that no such errors exist.

## A.  USDA's "Privacy Interest" Determination was Proper.

Plaintiffs attack USDA's privacy interest determination on two related fronts, asserting that USDA did not afford the proper weight to the interest because the agency impermissibly "diminished" the privacy interests it found, Plfs. Br. 30-37, and that the agency did not sufficiently explain how it determined the value and discounted allegations concerning how HSUS would supposedly use the Block 8 information.  Plfs. Br. 43-48.  Both attacks fail.  Rather than pointing to any actual

18

error, Plaintiffs offer arguments to the Court supporting alternative outcomes that the agency <u>might</u> have reached.  But it is not this Court's job–nor Plaintiffs'–to "substitute its judgment for that of the agency." *State Farm,* 463 U.S. at 43.  The issue here is not what weight this Court could assign the interest, but rather, was USDA's assignment arbitrary and capricious?  7 U.S.C. § 706(2)(A).  It was not. Indeed, as discussed more fully below, this Court's opinion in *Multi Ag* makes clear that USDA's privacy interest determination was entirely proper. *See Multi Ag,* 515 F.3d at 1230-33 (Court of Appeals ordered USDA to release requested information even though it would shed light on the "financial condition" of the individual farmers).

      1.   <u>USDA's "Gross Revenue" Determination was Correct.</u>

As noted above, USDA found that Plaintiffs have enough of a privacy interest in the Block 8 "gross revenue" information (total gross dollar amount derived from regulated activities) to trigger the Exemption 6 balancing.  AR 5529. Plaintiffs assert, however, that USDA's determination of the relative weight of that interest was incorrect because the agency did not specifically hold that it is "significant."  Plfs. Br. 30.  They cite to *Consumers' Checkbook* as the foundation for their arguments, s*ee* Plfs. Br. at 30-32 (citing *Consumers' Checkbook*, 554 F.3d 1046), but that case only confirms the agency's conclusions that licensees <u>have</u> a more than *de minimis*, "substantial" privacy interest in the "gross revenue"

information.  Mem. Op. 22.  As the District Court noted, *Consumers' Checkbook* is not helpful to Plaintiffs here because this Court did not find a valid public interest in that case against which to balance the privacy interests, thus it provides no guidance regarding the <u>relative weight</u> to assign to the privacy interest here.  Mem. Op. 22.  Thus Plaintiffs' reliance on that case is not only unavailing, it confuses the issues.[9]

Plaintiffs argue that USDA failed to "explain" why the identified privacy interest is "limited."  In support of this argument, they refer not to the actual Determination Letter, which does explain how the agency arrived at its decision, AR 5527-29, but to a memorandum created <u>prior to</u> the issuance of the Letter.  AR 5516.  Even if that pre-decisional document were properly at issue here, it does not demonstrate any agency wrongdoing.  Plaintiffs claim that USDA acted impermissibly because the memorandum referred to the weight of the substantial privacy interest as "limited," in addition to stating that there was a "strong

_____

[9] Plaintiffs also ignore the fact that, while they contend that the agency should have found a "significant" privacy interest, the finding of a more than *de minimis* privacy interest is, under Exemption 6, "substantial" and as the words "significant" and "substantial" are synonyms, they make no real argument here.  *See Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 33 (D.C. Cir. 2002) (noting that the first prong of Exemption 6 test asks "whether disclosure 'would compromise a <u>substantial</u>, as opposed to a *de minimis,* privacy interest" and that the balancing then only occurs "[i]f a <u>significant</u> privacy interest is at stake.") (emphasis added).  Plaintiffs word games here do nothing but lend unnecessary distraction.

20

argument" that the interest itself existed.     AR 5516.     But it is the final

determination under review here and <u>not</u> the agency's preliminary reasoning.

>     2.     USDA's Privacy Determination Concerning the "Animals Bought
>     and Sold" Information was Proper.

Nor are Plaintiffs' arguments about the weight assigned to the privacy

interest in the number of animals bought and sold persuasive.  USDA determined

that Plaintiffs have a substantial, *i.e.*, more than *de minimis*, privacy interest in this

figure, but that it was weaker than the interest associated with the gross revenue

figures.  AR 5529.  That determination is not only reasoned, it is entirely supported

by *Multi Ag*, despite Plaintiffs' claim to the contrary.

In *Multi Ag*, this Court ordered USDA to release individualized crop and

property data linked to farmers who reported the information to USDA for the

government's subsidy and benefit programs, even though release would shed light

on the "financial condition" of the individual farmers.  *Multi Ag Media,* 515 F.3d at

1230-33.     Just as in *Multi Ag* where there were variables that weaken the

correlation between the farmer's crop "assets" and his financial situation, any

correlation between the animal "assets" listed on a Form 7003 and a licensee's

financial situation is weakened because of the "economic variables" that are

present.  *Id*.

21

Indeed, as USDA had already noted, the price of dogs varies "<u>greatly</u> depending upon the dog's age, quality [and] breed" as well as due to the "popularity of the breed and the relative size of an average litter," therefore little if any useful information as to the licensees' finances can be derived from this information.  AR 5527 (emphasis added).  As such, the USDA's conclusion was entirely reasonable because, like in *Multi Ag*, while substantial, the privacy interest at issue here is nevertheless "not...particularly strong."  *Multi Ag*, 515 F.3d at 1230.

## B.  **USDA's Determination that the Public Interest is Served by Disclosure because it Sheds Light on USDA's Performance of its Statutory Duties was Proper.**

The USDA correctly determined that release of the Block 8 information enables the public to determine "whether the agency is fulfilling its statutory duties and the mandate of Congress" as set out in the AWA.  AR 5531; Mem. Op. 14-15.  Specifically, the agency reasonably found that the information on Form 7003 enables the public to determine "whether the agency is properly assessing fees in accordance with its regulations," "whether the agency…cause[d] to be collected reasonable fees [which] shall be adjusted on an equitable basis taking into consideration the type and nature of the operations to be licensed" and whether the agency is fulfilling "its enforcement duties under the Animal Welfare Act."  *Id*. Whether and how these public interests are served by release of the Block 8

22

information is readily apparent by looking at the Forms in light of the AWA's statutory and regulatory licensing scheme.[10]

> 1. <u>The Information at Issue Enables the Public to Determine Whether USDA is Complying with the Congressional Mandate to Assess and Collect Reasonable and Equitable AWA license Fees.</u>

Plaintiffs assert that there is no valid public interest in disclosure of the Block 8 information vis-à-vis the public's ability to determine whether the AWA fees are reasonable and equitable because USDA did not explicitly explain "how" the public would be able to determine reasonableness and equitableness. Plfs. Br. 18. They also claim the agency incorrectly found that the public can determine <u>if</u> USDA collected the requisite fees by looking at the Form 7003s with the Block 8

---

[10] Throughout their brief, Plaintiffs continue to rely upon the mistaken contention that HSUS was required to both identify the public interest served by disclosure and, similarly, was required to produce evidence of government wrongdoing. Plfs. Br. 24, 29, 49. As the District Court correctly held, however, HSUS is under no obligation to allege or prove the public interest served by disclosure when the agency has done so. Mem. Op. 15.

Plaintiffs also claim that the public interest should be rejected because they "must be given "prior notice" and "an opportunity to respond" to every argument or conclusion reached by the agency. Plfs. Br. 36, 49-51. However, as the District Court held, since this Reverse-FOIA matter is in the nature of informal adjudication, "agencies must satisfy only minimal procedural requirements" and there is no "obligation to prematurely disclose the materials on which it relies so that affected parties may pre-rebut the agency's ultimate decision." Mem. Op. 17 (*citing Sw. Airlines Co. v. Transp. Sec. Admin.*, 650 F.3d 752, 757 (D.C. Cir. 2011)).

information included.[11]  Plfs. Br. 22.  Plaintiffs further contend that if these public

interests do exist, the agency assigned them too much weight.  Plfs. Br. 38-42.

However, all of Plaintiffs' arguments fail, as they misapply the relevant law,

misrepresent the District Court's Opinion and commit their own serious errors of

logic and therefore fail to demonstrate that USDA's determination or the District

Court's grant of summary judgment was improper.

    First, the USDA was under no obligation to provide a step-by-step guide for

how the public could use the Block 8 information to assess the equity and

reasonableness of the AWA fees.  The agency's determination does not need to "be

a model of analytic precision to survive a challenge," *Dickson v. Sec'y of Def.,* 68

F.3d 1396, 1404 (D.C.Cir.1995), as long as the reviewing court is able to discern

the agency's decision-making process.  *State Farm,* 463 U.S. at 43.  As the District

Court found, the agency's decision-making process is readily discernible, and is

entirely reasonable.  *See* Mem. Op. 17-18 (discussing how Forms with information

---

[11]   USDA limited only the "assessment of fees" public interest to a particular
subset of the information requested, i.e., the "gross dollar amount from regulated
activities."   Indeed, both the number of animals bought and sold as well as the
gross revenue figures apply to the "reasonable and equitable fees" public interest
since the withheld information as a whole show the type and nature of the licensed
operation.   Similarly, USDA clearly stated that "the information on Form 7003"
goes to the agency's "performance of its enforcement duties under" the AWA—not
just some information on the Form.  AR 5531 (emphasis added).

included allow public to determine whether USDA is collecting the requisite fee review, determine who is being licensed and at what fee level, and to compare figures to gauge inspection and enforcement.).

Further, Plaintiffs contend that the public could not reach a reasonableness determination without having access to a Form 7003 for every breeder in the country, and thus having access to Plaintiffs' information is inadequate to understanding the equity and reasonableness of the agency's fee structure.  Plfs. Br. 20.  However, since these Forms <u>must</u> be released under FOIA, the public does indeed have access to all of the forms.   Moreover, even if only Forms from licensees in certain areas were requested, that would not foreclose the public from deciding if the fees assessed and collected from that subset of licensees are equitable and reasonable.[12]

This situation is distinguishable from the situation at issue in *Consumers' Checkbook*, upon which Plaintiffs so heavily rely.  Plfs. Br. 20.  In that case, the requesters claimed that the "frequency with which a physician performs a medical procedure indicates the quality of the procedure" and that they therefore could demonstrate whether Medicare beneficiaries were receiving quality healthcare

---

[12] Indeed, the statutory command that the "type and nature" of licensed entities should have a bearing on the amount of the required license fee drives home the point that there is great value in having access to only a particular subset of licensees and this entirely serves the relevant public interest here.

25

from the requested records that include the "diagnosis, the type and place of service and the [identifying number] of the [Medicare] physician who performed the services." *Consumers' Checkbook,* 554 F.3d at 1049, 1052. The problem there, however, was that the requesters would necessarily need to have the volume information from *non*-Medicare doctors against which to compare—something ostensibly not tracked by the Centers for Medicare and Medicaid Services agency, therefore not available to the requester and which could not form the basis of a comparison. Here, however, even if the public only had "access" to a subset of requested Forms, they could still reach a decision as to the equitable and reasonable distribution of fees across those licensees.[13]

Plaintiffs also dispute that the release of the Block 8 information will enable the public to determine whether USDA is properly assessing and collecting the mandatory AWA fees. Plfs. Br. 22. However, it is clear from the very face of each Form 7003 whether USDA is complying with its statutory duty here. *See* 9 C.F.R. § 2.1(d)(1) ("A licensee who wishes a renewal must submit to the appropriate Animal Care regional office a completed application form and the annual license fee indicated in § 2.6 by certified check, cashier's check, personal

_____

[13] Additionally, whether or not "fees usually are collected to defray expenses," Plfs. Br. 21, simply has no bearing whatsoever on the relevant public interests asserted here since that is not a statutory command found in the AWA (unlike the reasonable and equitable requirement).

26

check, money order, or credit card. The application form and the annual license fee must be received by the appropriate Animal Care regional office on or before the expiration date of the license."). The Forms, with the Block 8 information included, indicate whether USDA is actually collecting any fees. This is indicated in the "official use only" box. *E.g.*, AR 106 (also indicating what appears to be the check number used to pay), AR 18 (Form 7003 submitted with fee amount blank). The fee collected from the licensee can be cross-referenced with the chart in 9 C.F.R. § 2.6 and the "amount on which fee is based" line on Form 7003 and/or the "gross dollar amount derived from regulated activities" line on Form 7003–both of which are contained in the disputed Block 8 information–to determine if USDA is collecting the correct fee and not licensing those dealers or breeders that are not in compliance with the AWA regulations. *See id.* Thus, the agency was reasonable in finding that the release of the Block 8 information assists the public in ascertaining whether the agency is collecting appropriate fees, as the District Court properly found.

Plaintiffs' further efforts to discredit the agency's reasoned decision on this point also fall entirely flat. For example, Plaintiffs attempt to challenge the release of the actual fee amount paid by licensees, despite the fact that they never raised this at the agency level and thus are barred from raising it here. Plfs. Br. 22. They cannot, however, seriously dispute the fact that the Forms at issue here <u>do include</u>

27

the fee amount paid so Plaintiffs' argument, even were it properly before the Court, is without merit.  *See* Mem. Op. 10 ("The Forms at issue in these very FOIA requests reveal the fee amount paid.")  Plaintiffs also attempt to resurrect their unsuccessful argument below that because the Forms do not indicate what, if anything, USDA does in the event of an underpayment, the public interest is not served. Plfs. Br. 23.  However, what USDA does after the initial payment is irrelevant; the fact that there may be additional public records that would enable the public to determine what else USDA may do does not detract from the value of this information.  Indeed, the public may choose to follow up on the information available in these forms by seeking out additional agency documents available under the FOIA.  *Cf. Multi Ag*, 515 F.3d at 1232 (Court ordered disclosure even though the requested data, while allowing the public to "monitor program compliance," did not contain information on any remedial action that the government might have undertaken.).

> 2.  <u>The Information at Issue Enables the Public to Determine Whether USDA is Carrying out its Enforcement Duties Under the AWA.</u>

Plaintiffs argue that the public interest in knowing whether USDA is effectively inspecting licensees and enforcing the AWA is not served by releasing the "business volume information" on the forms–*i.e.*, the number of animals bought and sold because, they say, this interest is "not logically served" by

disclosure and it is not supported by the Record.  Plfs. Br. 25.[14]  Neither of these arguments has merit.

First, the logic supporting the existence of this public interest is straightforward.  As the District Court found, "if inspectors report 100 dogs on the premises, while the dealer claims on her Form that she bought and sold only 5 dogs in the last year, and yet the USDA pursues no enforcement action, a citizen may reasonably doubt the inspectors' diligence."  Mem. Op. 23.

Second, Plaintiffs allege that the District Court supplied this justification for disclosure that USDA had not provided, *i.e.*, that the public can compare the number of animals on a breeder's premises during an inspection and the number of animals bought and sold during a year–as available in Block 8–and draw conclusions as to whether there is concern for a licensee's non-compliance with the law and the agency's enforcement behavior.  Plfs. Br. 27.  Plaintiffs are incorrect. The District Court was merely reinforcing the conclusion that USDA itself reached—that the public, like the inspectors, can compare the information on the Forms against the other publically available information to identify situations that call for enforcement or that demonstrate lax inspections.  For instance, in the first

---

[14] As stated above, Plaintiffs' reading of the Determination Letter is unduly cramped – USDA did not limit this public interest to just the number of animals bought and sold figures but instead indicated that the gross revenue from regulated activities could be used as well.  AR 5531.

29

whole paragraph on Page 7 of the Determination, AR 5531, USDA explained the value of comparing the Block 8 information on the Forms with the number of animals listed at the facility on inspection reports.  In the second paragraph, USDA states that the public can utilize this info in the same way. *Id.* Thus, the agency was entirely reasonable in making this determination as to the public interest, and the District Court simply further elucidated the point.  *See State Farm,* 463 U.S. at 43.

### 3.   USDA Properly Weighed the Public Interest.

Plaintiffs also find fault with the agency's assignment of weight to the public interest. This argument also has no merit.  First, it is clear that an agency is under no obligation to assign a specific quantitative value to a public interest, as Plaintiffs might have preferred.  Instead, the agency is only required to consider the public interests and the privacy interests and make an appropriate assessment as to their relative values. *See Multi Ag*, 515 F.3d at 1230.  The agency has plainly done so here, finding that "[t]he public's interest in the activities of the agency outweigh the negligible privacy interest in the number of animals bought and sold and the minimal privacy interest in the gross dollars earned from regulated activities and the dollars upon which the fee was based."  AR 5531.

Nor should the Court entertain Plaintiffs' contention that *Consumers' Checkbook* precludes assigning "much, if any, weight," to the public interest of knowing whether USDA is collecting the fees it is required to collect.  Plfs. Br. 38.

30

In *Consumers' Checkbook*, the Court did not find a public interest because the requester there, unlike here, was required to demonstrate the public interest and failed to do so.  *Consumers' Checkbook*, 554 F.3d at 1056; *See also* n.3, *supra*.  As such, the case provides little guidance on how to weigh the public interests here.[15]

### C.  <u>USDA Considered the Relevant Factors and Properly Balanced the Competing Interests.</u>

Finally, Plaintiffs rehash of their previous unsubstantiated and inflammatory allegations concerning the HSUS and the HSUS's alleged desires to "put the Plaintiffs out of business" is entirely pointless.  The Record demonstrates that USDA did, in fact, consider Plaintiffs' allegations as to how the information would be used by the requester, but rightly found it irrelevant to the question before the agency.  AR 5528-29.  Aside from the baseless and inappropriate nature of these allegations, they are entirely legally irrelevant to the question of whether there is any public interest in release.  *See, e.g., Carter v. U.S. Dep't of Commerce*, 830

---

[15] Plaintiff's "alternative means" argument is equally meritless.  While it is not in dispute that an agency may indeed consider whether there are alternative *sources* of information, Plaintiffs' suggestion to USDA that the agency could comply with the FOIA requests simply by releasing an aggregated list of the withheld information is not an alternative source for the requested information and does not serve the same public interest that release of the Form 7003 does.  Indeed, Plaintiffs' suggestion here is an affront to the rule that FOIA "does not obligate agencies to create" records.  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).

31

F.2d 388, 390 n.8 (D.C. Cir. 1987) ("[T]he public's interest in disclosure is neither

lessened nor enhanced by the private purpose for which information is sought").

Moreover, in its <u>privacy</u> interest analysis, USDA considered comments from

non-Plaintiff licensees and found that the licensees did not meet their burden to

show how these allegations actually impact privacy concerns.  AR 5529.  As

USDA correctly determined, the majority of these claims do not refer to the

information at issue but rather deal with the general fact that licensees are engaged

in the regulated business of selling dogs.  AR 5528.  They are therefore not

relevant to the release of the Block 8 information and, as the District Court held,

the licensees fail to make the necessary "crucial link" between their asserted harms

and the information at issue.

Moreover, the various comments Plaintiffs point to from other licensees

show that they are nothing more than impermissible "generalized claims" *see*

*Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 943 (D.C. Cir. 2013),

which are wholly "unsubstantiated," *Blackwell v. F.B.I.*, 646 F.3d 37, 41 (D.C. Cir.

2011).  *See also Am. Civil Liberties Union v. U.S. Dep't of Justice,* 655 F.3d 1, 10,

(D.C. Cir. 2011).  Those licensees therefore failed to satisfy their burden of

supplying "specific factual and evidentiary material to support [their] position."

*See Nat'l Parks & Conservation Ass'n,* 547 F.2d at 673.

Although USDA determined that Plaintiffs have a "substantial" privacy interest in the Block 8 information, *"a privacy interest may be substantial…and yet be insufficient to overcome the public interest in disclosure."* *Multi Ag*, 515 F.3d at 1230. Here, the agency correctly determined that the public interests in disclosure outweigh any implicated privacy interests and Plaintiffs have not demonstrated that USDA's determination is in any way arbitrary and capricious. Therefore, as the District Court held, the Block 8 information is not covered by Exemption 6 and this Court should affirm the District Court's grant of summary judgment on this issue.

## III.  PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN TO DEMONSTRATE THAT USDA'S EXEMPTION 4 DETERMINATION WAS ARBITRARY AND CAPRICIOUS.

Plaintiffs' challenge to USDA's Exemption 4 determination boils down to only one question: whether the Block 8 information is "confidential" under FOIA. Plfs. Br. 52 (citing Mem. Op 8-9); *See* 5 U.S.C. § 552(b)(4). To prevails, Plaintiffs' must demonstrate that the agency was incorrect when it determined that disclosure of the Block 8 information would not "be likely [ ] to cause substantial harm to the[ir] competitive position." *United Tech. Corp.*, 601 F.3d at 559 (citations and internal quotation omitted). To meet this standard, Plaintiffs must offer more than simply "[c]onclusory and generalized allegations of substantial

33

competitive harm," *See Pub. Citizen Health Research Group v. F.D.A.,* 704 F.2d 1280, 1291 (D.C. Cir. 1983).  Plaintiffs have not done so, nor could they.

**A.    USDA and the District Court Applied the Correct, and Only, Exemption 4 Test.**

This Court has recently and routinely held, in no uncertain terms, that "[t]o qualify under this prong, an identified harm must "'flow[ ] from the affirmative use of proprietary information <u>by competitors</u>.'" *CNA Fin. Corp. v. Donovan,* 830 F.2d 1132, 1154 (D.C. Cir. 1987) (quoting *Pub. Citizen Health Research Group,* 704 F.2d at 1291 n. 30) (emphasis added).  As discussed below, Plaintiffs cannot meet this standard which, as Plaintiffs concede, has been the <u>only</u> test for competitive harm under Exemption 4 for at least three decades since this Court decided *Public Citizen.*  Plfs. Br. 53.

Plainly aware that they are unable to succeed under this standard, Plaintiffs ask this Court to ignore decades of case law and adopt their <u>own newly formulated</u> standard–which would expand the "competitive harm" language of the Exemption to "<u>any</u> type of harm."  If accepted, this would lead agencies and courts down the slope of examining the activities and motivations of any number of non-competitors who might have an influence on an industry, including consumers.

It is axiomatic that the Court should refuse to entertain Plaintiffs' invitation to adopt a completely new standard for competitive harm here, *Critical Mass*

34

*Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871, 876 (D.C. Cir. 1992) (Circuit court precedents "bind the circuit 'unless and until overturned by the court en banc or by Higher Authority'"), and adopt instead the reasoning of a 17-year-old case out of a New York District Court. *See* Plfs. Br. 55 (*citing Nadler v. F.D.I.C.,* 899 F.Supp. 158, 163 (S.D.N.Y. 1995)).

### B.      Plaintiffs Have Not Net their Burden to Demonstrate *Any* Harm Related to the Release of the Information at Issue.

Regardless of which test this Court were to apply, Plaintiffs have utterly failed to offer anything other than impermissible suppositions to demonstrate their "harm," or to carry their burden to show that the agency's determination on this score was inappropriate. *See Pub. Citizen Health Research Group,* 704 F.2d at 1291 ("Conclusory and generalized allegations of substantial competitive harm, of course, are unacceptable.")

There is no evidence in the Record that would support a finding that Plaintiffs' <u>actual competitors</u> could utilize the Block 8 information to harm Plaintiffs' competitive position.   Plaintiffs' claim that USDA impermissibly "discounted" any competitive harm that would be caused by release of the Block 8 information—had they actually shown such harm—is unavailing.[16]  Plfs. Br. 57.

---

[16] Because Plaintiffs did not make an affirmative showing that release of the information would cause *any* competitive harm, even had USDA erred on this

35

Plaintiffs contend that USDA could not use the fact that there is already disclosed information available about their businesses in the analysis of competitive harm, but offer zero support for that assertion.  Plfs. Br. 58 (citing to what Plaintiffs acknowledge is an Exemption 6, rather than Exemption 4, analysis).

Plaintiffs misrepresent USDA's determination.  USDA did not say that the availability of some other information would lessen harm related to disclosure of the Block 8 information.  Instead, USDA applied its industry expertise in analyzing the effects of disclosure of Block 8 information to determine that disclosure would not be able to cause harm because it is already disclosed.  *See* AR 5535-36.  In other words, the agency reasonably found that since the relative size of all licensees is already known, nothing new would be learned about them through the release of business volume information and therefore no harm (regardless of whether it be wrought by a competitor) could occur.  This Court should defer to USDA's "evaluations of the effect of release of the documents in dispute," *CNA Fin. Corp.,* 830 F.2d at 1156, and Plaintiffs' claims here fail as well.

Even if this Court were to set aside Circuit precedent and accept Plaintiffs' proposed new standard for competitive harm to include harm stemming from the

---

point, it would not prejudice Plaintiffs and is not a reason for this Court to set aside the agency's determination.  *Jicarilla Apache Nation,* 613 F.3d at 1121 ("[I]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.").

36

use of information by non-competitors, there still would be no basis for withholding the material under Exemption 4, or for finding that the agency's determination was inappropriate.  Plaintiffs have not demonstrated any injury that could befall them from the release of the Block 8 information.  For example, the very foundation of Plaintiffs entire "argument" as to why HSUS should be treated tantamount to a business competitor–*i.e.*, that HSUS has an "avowed goal…to drive [Licensees] out of business"–has no basis anywhere in the Record or fact and during the second round of comments, Plaintiffs provided <u>zero</u> evidence to show that the redacted information falls under Exemption 4.  AR 5373; AR 5132-41; AR 5308-19; AR 5416-39; *See also Occidental Petroleum Corp.*, 873 F.2d at 342.

Moreover, Plaintiffs' contention that HSUS would use the Block 8 information to label an entity as a "puppy mill," which would somehow "destroy" Plaintiffs' businesses is both nonsensical and also irrelevant to the legal issue here. Indeed, the "Dirty Dozen" publication that Plaintiffs refer to in their brief conclusively demonstrates that the information that HSUS relied upon to develop that report were the breeders' violations of humane standards of care that are already readily available in public inspection reports.  At best, the only thing Plaintiffs may have demonstrated is that they do not appreciate being labeled a puppy mill.  However, this Court has made clear that "Exemption 4 does not guard

37

against mere embarrassment in the marketplace or reputational injury." *United Tech. Corp.*, 601 F.3d. at 564.

Because Plaintiffs did not, and indeed cannot, demonstrate that they satisfied their burden to show that the Block 8 information falls under Exemption 4 and, similarly, since they failed to show that the District Court erred in granting summary judgment to HSUS and USDA, this Court should affirm the District Court's holding as to Exemption 4.[17]

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and in light of Plaintiffs' failure to demonstrate that USDA's determination was in any way improper, this Court should affirm the District Court's grant of summary judgment and order USDA to immediately disclose the long-delayed information to HSUS.

Respectfully submitted,

 /s/ Aaron D. Green

Aaron D. Green
Jonathan R. Lovvorn
The Humane Society of the United States
2100 L Street, NW

_____

[17] Because USDA's determination that the withheld information is not covered by Exemption 4 or 6, Plaintiffs' request for a "categorical exemption" is moot.  Plfs. Br. 59.

38

Washington, DC  22037
Ph: (202) 676-2334
agreen@humanesociety.org


*Counsel for Intervenor-Defendant-Appellee*
*The Humane Society of the United States*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation Fed. R. App. P. 32(a)(7)(B) because this brief contains no more than 10,330 words.

2.  This brief complies with the typeface requirements of Fed. R.App. P. 32(a)(5) and the type style requirements of Fed. R. App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, font size 14.

 /s/ Aaron D. Green
Aaron D. Green
The Humane Society of the United States

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2013, I caused to be electronically filed with the Clerk of the Court the foregoing Brief of Intervenor-Defendant-Appellee using the CM/ECF system, and service was affected electronically on the following counsel of record:

Alan Burch
U.S. Attorney's Office
(USA) Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
*Counsel for Defendant-Appellee United States Department of Agriculture*

Laurence J. Lasoff
Stephen R. Freeland
Elizabeth C. Johnson
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
*Counsel for Plaintiffs-Appellants*

 /s/ Aaron D. Green
Aaron D. Green
The Humane Society of the United States